The first case up this morning is 412-0348, re-marriage of Grubbs and Berendes. For the appellant is Jared Scott, you are he, sir? Yes. For the appellee is Kimberly Tolkien, pronounced correctly. Mr. Scott, you may proceed, sir. Thank you. May it please the court, counsel, my client Cheryl Berendes is here today with me, and we are here today to try to protect the property right that Cheryl was granted in a judgment for dissolution back in January of 2004. It was a property right that was a death benefit that existed in her ex-husband's pension account through the state of Illinois at the time and was earned during the marriage. And the reason we are here today is what we tried to do was seek modification of a quill drawer that was entered in conjunction with that judgment in January 2004 so that the death benefit could be allocated to her. Unfortunately, our motion to modify was denied. We sought a motion for reconsideration, and Judge Nardulli denied that, and that's what brings us to this appeal today. The interest that we are, there's two parts to our argument. The first is that Cheryl was denied due process rights of an actual hearing so she could explain to the trial court exactly why she felt she had an interest in the death benefit that existed in January 2004 so that we could introduce evidence of the fact that the death benefit did exist, what the value of that benefit was, and reasonably whether or not the trial court had any consideration of that death benefit at the time. Article 1, Section 2 of the Illinois Constitution says that no one can be deprived of property rights without due process of law, and that's one protection I think that Cheryl was deprived of, is her right to defend her claim to property that existed at the time of the marriage that was not specifically awarded, but it also was not specifically... I'm not sure I understand your contention here. Didn't the court conduct a hearing? Yes. Why wasn't the hearing sufficient to satisfy the due process claims that you are now making? The hearing with Judge Nardulli related to my motion is what you're asking about, correct? Yes. It was the initial one. I asked Judge Nardulli for the ability to present evidence, to call witnesses. That was summarily denied at the initial hearing without much argument. So... And my motion to reconsider, I did cite Colt. I was allowed to give some argument. There was no record taken, which is why we did the bystanders report, which is attached. But I think that at least under the cases that I've cited, including Houston, you need more than that. If you are protecting a property interest... Well, I don't understand. So you mean the court is under an obligation to hear evidence whenever a party wishes to offer it, or no hearing has been conducted? I think so. So what about summary judgment motions? How do those fit? Well, summary judgment motions also have documents, affidavits. They're typically done after some evidence has been conducted. Well, do they... I think in our case... Do they hear evidence at the hearings of motions and summary judgments? Take testimony? You hear argument, but... Well, you heard argument in this case, didn't you? Yes, but we weren't allowed to present evidence. How about motions to dismiss under 2619 or 2650? Do you present evidence? In our case, we're just trying to protect the property right. Well, that doesn't answer my question, counsel. On a motion to dismiss, do you present evidence? Yeah, but here we've got a motion to dismiss. Do you present evidence on it? No. Motions to dismiss are based mostly on law, not fact. I believe there's facts here that were germane to this determination that should have been allowed to at least be presented before the judge. Well, let me try to recharacterize the terms that we might be dealing with here. Are you familiar with the term estoppel by judgment? Yes. Okay. So we had a divorce. All the existing property was allocated. Why is a subsequent effort to increase the spouse's marital share of the property barred by estoppel by judgment? Well, I don't think we're trying to increase it, Judge. What our position is, is that she was granted one-half of the marital retirement. That included a death benefit. At the time, the pension code did not have a vehicle where that could be distributed to her. At the same time, the code said a quildro, which is what is used to divide the monthly benefits, shall not apply to affect the payment of any death benefit. Okay? So you can't allocate it, and you can't – Well, in a state employee death benefit, the state employee has an opportunity to name the beneficiary, correct? Yes. And either he names a particular person as death beneficiary or he names his estate as the death beneficiary. But I don't see why that couldn't have been accomplished at the time of the original trial. Well, you know, I don't either. I think that the wording of the order opens up at least more than one interpretation. And I believe that under some of the cases I've cited here, Richardson, Culp, we are allowed to look back and apply the new law, which does account for death benefits as of July 1, 2006, and we can apply those to old orders that have been entered if it clarifies the intention of the parties or the language of the order, which in this case I think it would. This allusion – Well, what evidence is there of the intention of the parties as to the death benefit? Well, that was what we weren't allowed to present. I would submit to this court that my client would have testified that she would not have intended to give up any benefit that was earned during the marriage, and she did not waive any benefit that was earned during the marriage. So you have a marriage of about 18 years. The facts of the case include my client was a stay-at-home mom, raised the children of Mr. Grubbs. Mr. Grubbs went to work for the state, earned pension during that time, 18 years of pension. That's marital. The judgment divided it in half but only mentioned the allocation of the monthly amount. Now, I think the Myers case is pretty clear that there must be an express waiver or clear expression of a spouse's surrender of an interest for that to go away. Culp, which was a 4th District case, dealt with a very similar scenario to what we have here with the exception that we are seeking modification versus implementation of a new quid pro quo. Culp, it was a 1999 judgment, which was before the new law came into effect, which was July 1, 2006. And the argument in Culp was, well, the judgment said the pension is valued at $84,000 as of April 20, 1999, and we should split it in half. The wife, in 2009, after the law had changed, came in and moved for entry of the quid pro quo under the new law, including death benefits, which weren't specifically mentioned in the 1999 order, and was granted the ability to do that. The husband's argument was very similar to what Mr. Grubbs' argument is in this case. Look, if it wasn't allocated before, Equilidro bars it from being allocated later. Well, the pension code would disagree with that because the pension code prevents Equilidro from affecting the payment of any death benefit. So we have essentially a benefit that's just sitting there and no vehicle to get it to Sherrill until the law was changed on July 1, 2006. Culp allowed, I mean, it was a reserve jurisdiction approach, which no quid pro quo was entered until January of 2009, but it was related to an order from 10 years before. And what I brought up in the trial court, and I think that should not be lost in this court, is that the principle behind Culp allows quid pros to be amended consistent with changes in the law in order to effectuate intentions of the parties. Now, we do have an unfortunate situation here that Mr. Grubbs has passed away since the initial filing of our motion. So if this is sent back to the trial court, we are going to lose some ability to obtain testimony, obviously from his point of view, but I still think there is enough evidence that can be brought to the table that would satisfy the elements needed to show that, number one, a death benefit existed, number two, what the value of that was, number three, what was the inclusive period of the marriage that should be considered here, and number four, what should be allocated to Cheryl by way of a modified quid pro. One thing that this case has similar to the case called Smith that I cited to is that the record is not really too extensive here. There was no hearing in the underlying trial. There was no hearing for our recent motion where evidence was introduced. So we're basically left to kind of reconstruct this case based on what was there, and I've reviewed the entire record, I'm sure each of you has as well, and nowhere in there is there a mention of the word death benefits until Cheryl filed the underlying motion that we're here for today. So it was not addressed previously. The fact that it was not addressed doesn't mean that it goes away and that she doesn't have the right to it. I think that now that the law has been changed, and there's certainly reason that the pension code has been changed to allow death benefits to be allocated. Before, it's not like they didn't exist. The pension code specifically mentioned death benefits and had a definition of them, which hasn't changed since then. But now that it's a vehicle by way of quid pro to allocate those, I think that this court should rule that the trial court made an error and that we should enter a modified quid pro granting Cheryl her one-half share of the marital property rights, pension rights. What about the fact that in Culp there was a reserve judgment aspect of it? Isn't that a distinguishing factor between that case and this case? Yes, it is. In Culp, as at least one of you knows quite well who wrote the decision, the issue of death benefits did come up and it's addressed in the opinion, but it was not raised in the trial court so they didn't get into it all the way. But I think what we're relying on more is the principle behind it that, hey, you have new law, there's better law that allows you to divide something that someone was awarded. Why not use it? I don't think that we're prohibited from doing that based on the cases that I have here. Reserve jurisdiction, yeah, you are correct. They did say, yeah, we'll deal with that later, but what they were allowed to do is use the new law to deal with an old order, which is essentially what we're trying to do. And we aren't asking to open up the judgment. We're not asking to modify it. We're only asking for that property right that's just been in limbo to be given to her under the new form of builder. Anything further, counsel? One moment. The only thing I would say other than if this court chooses not to direct that a modified builder be ordered, I ask that it remand the case to trial court for full hearing on the issue. Thank you. Thank you, counsel. Ms. Falcon? May it please the court? Counsel? Mr. Scott, your honors, we're here today, as Mr. Scott stated, because of this order that was entered in the trial court, which denied Mr. Scott's motion for a motion for entry of a modified boulder. And as Mr. Scott stated, the one fact that wasn't present in his brief is that Mr. Grubbs has passed the order. He's passed away since the entry of this order. With regard to Mr. Scott's... I have to speak up just a little bit. Certainly. With regard to Mr. Scott's contention that there was no hearing, the time for hearing was when the judgment for dissolution was entered. At that time, the parties agreed to a judgment for dissolution, and they signed it, agreeing to that. That's when the property rights were vested. That was when the contractual property rights were vested, and that was the appropriate time for a hearing. At that time would have been the time for the parties to discuss how much the pension was and what portion each party got. And the judgment did. It stated that Ms. Berendes was to receive $708.39 per month. No increases, no lump sums, no termination benefits, no partial refunds, just the monthly amount. Now, the judgment only stated the monthly amount, but the quildra that was entered the same day as the judgment stated those other items, the no increases, no lump sums, no termination benefits, no partial refunds. Because of that, the court doesn't have the jurisdiction here to hold another hearing. The property right has already been determined. Now, with regard to a hearing, there was a hearing on Mr. Scott's motion, as Your Honor pointed out. The judge heard argument, at least on the motion to reconsider. There was no evidence, but the court had the judgment for dissolution of marriage and the quildra in front of it to review so that there was no necessary evidence needed. If the trial court of this court accepted Mr. Scott's arguments, what would be the effect? What would happen at the trial court level? Well, at the trial court level, I think there's a couple problems. If we have a hearing, Mr. Grubbs isn't around, there can be no testimony on his behalf as to the intent of the parties. Well, what is your understanding is what would he be seeking on behalf of his client at the trial court level? It's my understanding he's seeking a portion of the death benefits from the state pension, from Mr. Grubbs' state pension. That's my understanding as to what he is seeking. The death benefits being the life insurance policy, essentially, that state employees have that's payable when they die? There is a separate death benefit through the pension, yes. Okay. And at the moment, that's paid to his estate? It is paid to a trust for the benefit of his son. Okay. And how much money are we talking about? I believe, and I don't have the figures, Your Honor, but I believe it's over $100,000 total. That would not be the amount that Ms. Berendes is entitled to. Mrs. Scott's position is some portion of that should go to his client? That's what I believe his position is, Your Honor. As I understand, he's talked about a change in Illinois law, which is different than when the agreement was reached, is that right? Yes. Is he correct? There has been a change in law. In 2004, when the judgment was entered and the quadro was entered, the Illinois pension code at the time did not allow for death benefits to be affected or allocated through a quadro. The law became effective July 1st, 2006, that allowed death benefits to be incorporated into the quadro, which is over two years after this judgment was entered. And had the law been in existence when the marital settlement agreement was reached, there could have been some discussion about that aspect of it as well? There could have been. Now, I wasn't involved in that, and I don't know if there was that. Because it couldn't be divided into quadro. Would the court have had the power to say or the authority to say you will designate this individual as a beneficiary for half of the death benefit payable to you?  Well, the reason Justice Connect got more directly to the point than did I, but that's essentially one of the points I was looking for. We see a lot of marital cases on appeal. And so happens Mr. Grubbs was a state employee with the stuff benefit. But we see other instances where there are insurance questions about how insurance proceeds will be paid out on the death of one of the parties, typically it's here the husband slash father, and that's been part of the marital settlement agreement. And I believe your honors are correct that Mr. Grubbs was able to place a beneficiary, name the beneficiary to those death benefits, and certainly if it's claimed that it was marital property, they could have bargained for that within the marital settlement agreement, or it could have been ordered if there was a trial. Now there wasn't a trial. These parties agreed. And that's certainly something that Ms. Berendes did not ask to be included, or at least it was not included in the marital settlement agreement. So to say that under the quadro provisions couldn't have been done, does that mean it's the only way it could have been done or addressed back before this statutory change? I believe that the court could have ordered that. And I don't know this, but it seems logical that the court could have ordered, just with life insurance as the court can order, name the ex-spouse as a beneficiary. I believe the court could have ordered that Mr. Grubbs name Ms. Berendes as beneficiary. When did Mr. Grubbs die? He passed away July 31, 2012. When was this? The motion was November 10, 2011, and Mr. Grubbs was ill at the time. And the statutory change occurred in 2006? That's correct. It became effective July 1, 2006. So your fundamental position is? Well, our fundamental position, Your Honor, is that the court didn't have jurisdiction to reopen the property settlement that had been entered. That property settlement was vested as of 30 days after the judgment. Ms. Berendes didn't claim any fraud or other statutory factor to reopen that property settlement. Well, doesn't this Marriage and Disposition of Marriage Act provide that the provisions of the property disposition may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of judgment under the laws of the state? I believe that's what it states, Your Honor, yes. Well, then the court's got to have jurisdiction to entertain them, isn't it? Well, and I would argue that the facts weren't present here to apply that. Counsel, you may be right, and we might agree with you. All I'm pointing out is to say the court doesn't have jurisdiction is not the correct terminology. Jurisdiction, clearly the court would have jurisdiction to conduct a hearing to determine whether these circumstances were present. Certainly. Go ahead. With regard to the Illinois Pension Code, it does state the trial court retains jurisdiction to, and I'm going to cite here, enter a supplemental order to clarify the intent of the parties or the court regarding the benefits allocated in accordance with the party's agreement or judgment. And certainly here, it's our position that this supplemental order or modified quadro that Mr. Scott was seeking was to change the benefits that were received, not to enforce the intent of the parties. And I know Mr. Scott used the Culp case, and I believe Your Honor pointed out that case was much different in the fact that there was no quadro entered. After the judgment was entered, it was entered, I believe, in 1999, and then in 2001, the court specifically reserved jurisdiction to enter a quadro at a later date. And that wasn't reopened until several years later. That's when the quadro was entered, and at the time, because there had been no mechanism for division, the court used the quadro with the laws that were in effect at the time. This case is different because there was a mechanism of division already in place. The judgment stated that the benefits will be divided pursuant to a quadro, and then a quadro was entered the same date as the judgment. And I believe that's a very important distinguishing factor between Culp and the present case. And additionally, the Culp case did deal with this issue and said it wasn't raised until it was here at the appellate level, and so there was no decision made on that, the death benefits. I believe a closer case is the Kehoe case, in which the court did, in that case, some facts. The court allowed, there was a quadro entered at the time of dissolution, and then later, the wife motioned for entry of a quadro because the quadro was no longer effective under Illinois law, because they were dealing with a police bench. In that case, the wife attempted to have new terms entered into the quadro that were not in the existing quadro, and the court didn't allow that, stating that the quadro had to be entered, giving effect just to those terms that were in the quadro, and couldn't change the terms, couldn't alter the terms of the agreement that the parties had originally reached. It could only give effect to those terms. And it's our position that Ms. Berendis is attempting to alter the terms of the agreement, not to give effect to the terms of the agreement. Now, certainly, as I stated, the problems with remanding Ms. Beck for hearing include that Mr. Grubbs can't testify as to his intent, and certainly Ms. Berendis, under the Dead Man's Act, can't testify as to conversations that were had with Mr. Grubbs present. And this gives Mr. Grubbs no way to rebut any testimony that Ms. Berendis may give. Additionally, the intent of the parties can be found via the judgment and the quadro that were entered the same day as the judgment. This trial court has to look within the parameters of the documents before it looks at testimony and outside evidence. And here the parameters of the documents state that Ms. Berendis will receive $708.39 per month. In addition, a quadro will be entered to that effect. A quadro was entered the same date. That quadro had specified amount, and it had nothing further in there, and the judgment had nothing further about the death benefits. As Mr. Scott pointed out, the words death benefits were not included in this, in any document, until he filed the motion to modify the quadro. Certainly, the logical progression here is the judgment states that it's to be divided via quadro. A quadro was entered that date. The quadro had a specific dollar amount, and a quadro at the time could not allocate the death benefit. The parties could not have intended that quadro to allocate the death benefit. And because they agreed to enter into a quadro that day, they could not have intended that the quadro affect the death benefit, or that the death benefit be divided at that time. We believe that Ms. Berendis is asking for additional benefits that were not part of the original judgment, and for those reasons, we believe the court did not err when it denied the motion to modify the quadro, and we believe that this court should affirm the trial court's denial of that motion to modify, based on the fact that this was not an appropriate case for evidence to be heard, given that the documents were there for the judge to review, and also given the intent of the parties were in the documents. And certainly, the retroactive nature of the application of the law that Ms. Berendis is seeking isn't something that is readily available in many cases. Certainly, the implementation date shows legislative intent for that law to be a prospective application. Certainly, the law was passed in 2005, but wasn't effective until July of 2006, and nowhere in it does it state that it should have retroactive application. And we argue that because of that, the law that was in place at the time the quadro was entered should be the commanding law here. Just to be clear on this point, is it your position that before the law was changed, death benefits could still have been part of the marital settlement agreement the parties reached in this divorce, concerning his state employment and the state term life insurance policy that came along with his employment, that that was going to be paid in the event of his death? That could have been a subject of negotiation at the marital settlement agreement? Based on my reading of the Illinois Pension Code, it appears that it could have been. The death benefit was in existence at the time. Well, then what did the statute do to change any of this? I'm not sure. Well, the statute just allowed the quadro to be the mechanism to divide that. Okay. And certainly, the quadro wasn't used to divide that here, because it couldn't have been. But it could have been done before then even without the quadro? I certainly don't know that as a matter of fact, Your Honor, but I don't know why it could not have been. I don't have any information that tells me that they couldn't have bargained for it as they would any other life insurance policy. Well, rather than a quadro, all it would take was a beneficiary designation, and the trial court certainly had jurisdiction to order that the husband designate some percentage of the death benefit on that policy to be made in order to be unchangeable. That's my understanding. Certainly, I don't know, but that is my understanding. Just as any life insurance policy, a beneficiary designation can be included in the marital settlement agreement or in judgment for dissolution. That that could also have been included just as any other life insurance policy could have been included. And because of those reasons, Your Honors, we're asking that this court affirm the lower court decision and essentially deny the modification of this quadro because there were other avenues to be taken. They weren't taken, and don't believe that it's proper now for Ms. Berendes to attempt to get these benefits that were divided back in 2004 when the parties were initially forged. Thank you, counsel. Mr. Scott, any rebuttal, sir? Mr. Scott? Yes. At the time of the judgment of dissolution and the domestic relations order, the law forbade the division of pension benefits in such a domestic relations order. How can it possibly be that it was the intent of your client to have that included in an order when the law forbade it being included? Well, I think that had we had an opportunity to present evidence, you would have heard that her intention would never to be to waive that, and here's why. What does that have to do with modifying the domestic relations order? Modify it because now you can allocate it. What is it that says that this is retroactive in application? Well, I believe that Cole... Wouldn't you be stuck with the facts in the law at the time they existed at the time of the divorce? At the time of the judgment? Yeah, I think you would. So the law and the facts at the time of the dissolution... Correct. It permitted the allocation of a death benefit. You just couldn't allocate it using a domestic relations order. Well, would that be correct? I'm not entirely sure if that's 100% correct. So you're unfamiliar with case law that says, you name this person as the beneficiary, this is the order of the court, this is part of the judgment, this is part of the disposition of property. I didn't come across cases as specific as that for this case. In relation to child support, in relation to the division of property, forgetting state employees... Okay, I thought you had a more narrow question. Well, the court has the power to do that. Yes. Was there something about the creation of domestic relations order that took that power away from the court? I'd say arguably yes. If you look at the judgment in this case, these parties had one major marital asset. They had a home, which had no equity. They had two cars they divided up. And then the only major asset was the pension of Mr. Grubbs. And for anyone to think that Cheryl would have waived her right to any and all marital benefits on that, if that evidence was allowed to be presented before the court, I think that would support our theory. Now, I can't tell you what was presented to the court in January of 2004. I can only go by the scan record. Mr. Scott, the question specifically is, was there any reason, if that had been the agreement of the parties, that your client could have insisted at that time? By the way, I want to have a provision in here that says, upon your death, the death benefits will be divided up in X fashion. The court had the authority to do that, didn't it? I assume they would have. Well, but that wasn't done. Now you're saying, well, we have a change in the statute, so now we want to clarify the parties' intents, except one of the parties is now dead, and this statutory change occurred in, what, 2006? Yes. She waited five years before bringing this action, so that even if you succeed in convincing the trial court that parole evidence should be admitted on this question to determine the intent of the parties, one of the parties is no longer here to provide any testimony. Wouldn't that be correct? That is correct. It doesn't mean we can't present testimony around that. Someone else can testify on his behalf if they knew his intent. The attorneys that were involved could testify. We could bring the documents from the retirement system and someone to validate those as to what existed at the time. I think there is a way to get around it. Is it ideal? No, you're right. Without Mr. Grubbs, and it's unfortunate too, we filed this prior to the time that he did pass away, and we're hoping for a hearing before that time. So best evidence, no. Second best is all we can do on that. But I will point out that this was the only major asset that these people were dividing. Well, counsel, if it was the only major asset, then it was known. And it had to have been known that you couldn't distribute it based on the domestic relations order. Would that be correct? I think so. Well, if you've got a major asset and people are getting a dissolution, doesn't there have to be some negotiation or agreement as to how to dispose of it? I would think there would be, but I don't know. At the time, I'm not sure how they handled that, to be honest with you. It seems like that was just the only way they did it was quildros, and quildros missed a large portion of what was available. I took a lot of your time and rebuttal. I'll give you another minute just to say whatever it is you wish to say to wrap up here. Okay. Just quickly on the Kehoe case, Kehoe, I think, dealt more with a calculation. It's a formulaic argument more than one that we are making here. It was the calculation of the benefit was included in the quadro, which was converted to a quildro under the same calculation. While not ideal, I do think we do have a way that we can prove intent of the parties or at least what was known to the parties at the time by way of introducing evidence of other people, excluding any statements of Mr. Grubbs, obviously. I think this is a property right that Cheryl does have some protection under the Constitution. That's why we're here. I think it is one that the law recognized was missing from the pension code, which is why it was probably changed to add it in. I don't think we are prevented from modifying it after the fact if it's a right that was there and it's a right that wasn't specifically waived. I think Meyers supports the fact that you do need a specific waiver in that regard. Okay, counsel. Thank you. I will take this matter into advisement. Any recess? There will be a moment.